**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:22-CV-03004-KSM |
| | ) | |
| SOUTHEASTERN PENNSYLVANIA | ) | |
| TRANSPORTATION AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>CONSENT DECREE</u>**

## I.     INTRODUCTION

This action was brought by Plaintiff United States of America ("United States") against Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"), following receipt by the United States from the Equal Employment Opportunity Commission ("EEOC") of charges of discrimination filed by Jon Randolph ("Mr. Randolph"), Nathan D'Ettorre ("Mr. D'Ettorre"), and Anthony Lederer ("Mr. Lederer") against SEPTA.  This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1345.

1.     The complaint filed by the United States alleges that SEPTA discriminated against Randolph, D'Ettorre, and Lederer (collectively, "Charging Parties") when it subjected them to: (1) a hostile work environment on the basis of race and religion, created by their supervisor Bryan McCauley ("McCauley"); and (2) retaliation in response to filing complaints of harassment against McCauley.

2.     SEPTA denies it discriminated or retaliated against the Charging Parties in

1

violation of Title VII.

3.      Nevertheless, the United States and SEPTA (collectively, "Parties"), desiring that this action be settled by an appropriate Consent Decree ("Decree"), and to avoid the expenses, burdens and risks of protracted litigation, agree to the jurisdiction of this Court over the Parties and the subject matter of this action.  The Parties also agree that venue is proper in this district for the purposes of this Decree and proceedings related to this Decree only.  This Decree, being entered into with the consent of the United States and SEPTA, shall in no way constitute an adjudication or finding on the merits of the case.  The Parties further agree that all statutory conditions precedent to the institution of the lawsuit have been fulfilled.

## II.    FINDINGS

4.      Having examined the terms and provisions of this Decree, the Court finds the following:

(a)     The Court has jurisdiction over the subject matter of this action and the Parties to this action.

(b)     The terms and conditions of this Decree are fair, reasonable, and just, and the rights of the Parties are protected adequately by this Decree.

(c)     This Decree conforms with the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights and privileges of any person.

(d)     The entry of this Decree will further the objectives of Title VII and other applicable law, and will be in the best interests of the Parties.

In resolution of this action, the Parties hereby AGREE to, and the Court expressly APPROVES, ENTERS and ORDERS the following:

III.     **EQUITABLE RELIEF**

5.      SEPTA, by and through its officials, agents, and employees, shall not engage in any act or practice that discriminates against any employee or applicant in violation of Title VII, including creating and maintaining a hostile work environment on the basis of race and religion.

6.      SEPTA, by and through its officials, agents, and employees, shall not engage in any act or practice that constitutes retaliation in violation of Title VII.  Any action that might deter a reasonable person from asserting rights protected by equal employment opportunity laws because that person has engaged in protected activity, such as opposing an unlawful employment practice or participating in an investigation into unlawful practices, constitutes retaliation. Opposition or participation may include, but are not limited to: filing a charge with the EEOC; making complaints to supervisors or SEPTA's internal investigation units; or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII, this case, or this Decree.

*SEPTA Transit Police Department Anti-Discrimination and Anti-Retaliation Policies*

7.      Within sixty (60) days of the entry of this Decree, SEPTA shall submit to the United States, for review and approval, proposed written anti-discrimination and anti-retaliation policies—specific to its Transit Police Department—including its procedures for reporting employee complaints of discrimination and retaliation.  Such approval by the United States shall not be unreasonably withheld.

8.      The proposed SEPTA Transit Police Department ("STPD") policies shall comply with Title VII and shall include, at a minimum:

(a)     A clear statement that discrimination, including discrimination based on race and religion, is prohibited;

3

(b)     A clear statement that retaliation against a SEPTA employee for submitting a
complaint of discrimination is prohibited.  Retaliation shall be defined as, at
minimum, any action that might deter a reasonable person from asserting rights
protected by equal employment opportunity laws because that person has engaged
in protected activity under Title VII;

(c)     An appropriate description of what acts may constitute prohibited discrimination
or retaliation, including a statement that discrimination or retaliation for
protesting perceived discriminatory SEPTA policies, is prohibited;

(d)     A description of the complaint process, including the manner in which an
employee may make a complaint of discrimination or retaliation and indicating
that a complaint may be written or oral, and clear statement that complaints of
discrimination or retaliation submitted by STPD employees will be promptly
addressed;

(e)     The identification of the individuals authorized to accept complaints, including
their contact information, which shall include an employee both within and
outside the chain of command of the complaining STPD employee;

(f)     The identification of the individual(s), including their contact information,
designated as responsible for investigating complaints of discrimination or
retaliation submitted by STPD employees;

(g)     A description of the complaint investigation process, including the procedure for
appropriate follow-up with a complaining employee with the investigation results
and process to report further complaints;

(h)     The development and implementation of policies and procedures designed to

4

ensure a fair and independent process for investigating, making determinations, and implementing any related discipline for complaints of discrimination and retaliation in the SEPTA Police Department.  At a minimum, such policies and procedures shall include:

 a. The involvement of SEPTA EEO in investigations, findings, and discipline determinations, regarding SEPTA Police Department complaints of discrimination or retaliation;

 b. Regarding only complaints of discrimination or retaliation, policies and procedures for the review of findings and recommendations of the Police Board of Inquiry ("PBI") or any other body tasked with making findings and recommendations, including a description of the process for documenting the reasons why any finding or recommendation made by the PBI or any other body tasked with making findings or recommendations is not followed;

 c. Regarding only complaints of discrimination or retaliation, such procedures will ensure, at a minimum, that the Police Chief, alone, shall not have the authority to modify PBI findings.

(i) A description of the appropriate discipline policies, procedures, and guidelines that are designed to promptly correct discrimination and retaliation;

(j) A requirement that any supervisor or manager who witnesses or learns of possible discrimination or retaliation must take prompt action to report and address the issue even if no complaint has been filed;

(k) A description of accountability measures, including any appropriate discipline, to

ensure that supervisors and managers implement the policies relating to reporting, investigating, preventing, and correcting instances of discrimination and retaliation;

(l)     Revision of STPD policies to encourage all employees who allege they are victims of discrimination or retaliation, whether supervisory or non-supervisory, to make a complaint without the threat of discipline;

(m)     Revision of STPD policies to encourage non-supervisory employees to immediately report any discrimination, after witnessing or learning of such discrimination, without the threat of discipline;

(n)     The review, revision, and implementation of SEPTA policies and procedures to prevent the re-hire of SEPTA police officers who have been discharged for discriminating, harassing, or retaliating against employees and/or citizens except when those SEPTA police officers have been reinstated and/or returned to work pursuant to a decision made from binding arbitration under the collective bargaining agreement between SEPTA and Fraternal Order of Transit Police;

    a.   Should an officer be reinstated pursuant to such binding arbitration, SEPTA shall take all reasonable and necessary steps available to prevent further discrimination, harassment, or retaliation by the reinstated employee; and

(o)     The review, revision, and implementation, as necessary, of STPD policies and procedures for placing employees on administrative duty or leave during the pendency of an investigation regarding discrimination, harassment, or retaliation.

9.     At the time SEPTA provides the written policies and procedures pursuant to

6

Paragraph 7, SEPTA will identify by job title and department, the person(s) within SEPTA, who will provide information to the Department of Justice concerning oversight of the newly implemented policies and who will be responsible for ensuring that SEPTA implements the relief required by the Consent Decree.

10.    If the United States has any objection to SEPTA's submitted policies, the United States will so notify SEPTA in writing within thirty (30) days of receipt of the submitted policies.  While the United States generally will not withhold its approval of the policies, absent good cause, such approval may be subject to suggested revisions to the submitted policies. Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the submitted policies prior to initiating the dispute resolution provisions of Paragraph 33.

11.    Within thirty (30) days from the date that either the United States has no further objections or the dispute resolution process in Paragraph 33 has concluded, SEPTA shall adopt and implement the finalized policies and disseminate the finalized policies among all of its employees, supervisors, officials, and human resources or EEO personnel involved in receiving or responding to complaints of discrimination or retaliation made by employees within the SEPTA Police Department, or otherwise providing oversight for enforcement of these policies within SEPTA.  SEPTA shall publicize such policies and procedures by, among other things, posting them in its primary STPD headquarters located at 234 Market Street, 6th Floor and its various district headquarters, distributing them by email to all employees of the SEPTA Police Department and/or during roll call, and on any intranet website used for posting notices or policy changes for or concerning policies in effect for SEPTA, and distributing the policies to SEPTA's EEO staff.  In addition, SEPTA shall ensure each new employee hired who works in or with the

STPD receives a copy of the approved policies at the time of the new employee's hire.  SEPTA shall require all such employees, current and new, to acknowledge that he or she has read and understands such policies, and such acknowledgments shall be maintained in the employee's personnel file.

12.     Within thirty (30) days of SEPTA's distribution of the discrimination and retaliation policies, SEPTA shall provide the United States written verification that SEPTA completed the distribution in the manner prescribed by Paragraph 11, above.

13.     On the same day that the new policies are posted and disseminated to SEPTA employees, SEPTA's CEO and General Manager will also provide a written statement to the STPD employees discussing the importance of having a workplace free of discrimination, harassment, and retaliation.  This statement will be made as a stand-alone statement and will not be made in conjunction with any other issues unrelated to the Consent Decree and new policies implemented as a result of the Consent Decree.

*Required Trainings*

14.     Within ninety (90) days from the date SEPTA adopts the agreed to policies, SEPTA, at its own cost, shall provide SEPTA's Director of Human Resources, Human Resources Managers, EEO employees and managers, and any other STPD employee who is involved in receiving, investigating, or resolving complaints of discrimination and retaliation made by an employee within the SEPTA Transit Police Department, a mandatory, live (in person or virtually via the Internet), interactive training on prohibited employment practices under Title VII and on SEPTA's anti-discrimination and anti-retaliation policies as developed or revised under this Decree.  This training shall be provided by an entity outside SEPTA.  The training shall, at a minimum, include an explanation of those policies and the mechanism for reporting

8

complaints of discrimination, including retaliation, and shall train such employees in discrimination, harassment, and retaliation law and methodology for conducting investigations in these areas.  Training regarding SEPTA's policies may be given by a SEPTA employee.

15.     At least sixty (60) days before the mandatory training in Paragraph 14 is conducted, SEPTA shall submit to the United States, for review and approval, which approval shall not be unreasonably withheld, biographical information about the trainer(s) and the training materials to be used.  If the United States has any objection to SEPTA's proposed training program, including the materials or the proposed trainer(s), the United States will so notify SEPTA in writing within thirty (30) days of receipt of the proposed training program and materials.  While the United States generally will not withhold its approval of SEPTA's training materials, absent good cause, such approval may be subject to suggested revisions to the training materials.   Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the training program, materials, or trainer(s) prior to initiating the dispute resolution provisions of Paragraph 33.

16.     Within sixty (60) days from the date SEPTA provides the training referenced in Paragraph 14, SEPTA, at its own cost, shall begin providing an annual, mandatory, live (in person or virtually via the Internet), interactive training on prohibited employment practices under Title VII, and on SEPTA's anti-discrimination and anti-retaliation policies as developed or revised under this Decree, to all STPD supervisory employees and managers, provided, however, that SEPTA may, on a limited case by case basis, provide training via duplicate video recording to accommodate staffing needs and special circumstances making live training infeasible or impractical (such as where a person is unavailable due to pre-scheduled leave or work travel). The first such annual training shall be provided, in part, by an entity outside SEPTA to include

9

information regarding discrimination, harassment, and retaliation law.  The training shall also include, at a minimum, an explanation of the policies and the mechanism for reporting complaints of discrimination or retaliation, including identification of the person(s) to whom complaints of discrimination may be submitted, and shall specifically discuss the responsibilities of supervisors to report and investigate discrimination complaints, including retaliation. Training regarding SEPTA's policies may be given by a SEPTA employee.

17.     At least sixty (60) days before the mandatory training in Paragraph 16 is conducted, SEPTA shall submit to the United States, for review and approval, which approval shall not be unreasonably withheld, the training materials to be used and identify, for review and approval, the person or persons who will provide the training and provide their credentials.  At the same time SEPTA provides its proposed training materials to the United States, it will identify by job title the person or persons within SEPTA's Department of Human Resources or other SEPTA department who will provide information concerning, and oversight of, the implementation of the training.  If the United States has any objection to SEPTA's proposed training program, including the materials or the proposed trainer(s), the United States will so notify SEPTA in writing within thirty (30) days of receipt of the proposed training program and materials.  While the United States generally will not withhold its approval of SEPTA's training materials, absent good cause, such approval may be subject to suggested revisions to the training materials.  Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the training program, materials, or trainer(s) prior to initiating the dispute resolution provisions of Paragraph 33.

18.     Within thirty (30) days from the date SEPTA provides the training referenced in Paragraph 16,  SEPTA, at its own cost, shall begin providing an annual, mandatory, live (in

person or virtually via the Internet), interactive training on prohibited employment practices under Title VII, and on SEPTA's anti-discrimination and anti-retaliation policies as developed or revised under this Decree, to all SEPTA employees working in the SEPTA Police Department (not already covered under Paragraphs 14 and 16), provided, however, that SEPTA may, on a limited case by case basis, provide training via duplicate video recording to accommodate staffing needs and special circumstances making live training infeasible or impractical (such as where a person is unavailable due to pre-scheduled leave or work travel). The first such annual training shall be provided, in part, by an entity outside SEPTA to include information regarding discrimination, harassment, and retaliation law. The training shall, at a minimum, include an explanation of those policies and the mechanism for reporting complaints of discrimination or retaliation, including identification of the person(s) to whom complaints of discrimination may be submitted. Training regarding SEPTA's policies may be given by a SEPTA employee.

19.    At least sixty (60) days before the mandatory training in Paragraph 18 is conducted, SEPTA shall submit to the United States, for review and approval, the training materials to be used and identify, for review and approval, the person or persons who will provide the training and provide their credentials. At the same time SEPTA provides its proposed training materials to the United States, it will identify by job title the person or persons within SEPTA's Department of Human Resources or other SEPTA department who will provide information concerning, and oversight of, the implementation of the training. If the United States has any objection to SEPTA's proposed training program, including the materials or the proposed trainer(s), the United States will so notify SEPTA in writing within thirty (30) days of receipt of the proposed training program and materials. While the United States generally will not withhold its approval of SEPTA's training materials, absent good cause, such approval may

be subject to suggested revisions to the training materials.  Regarding any timely made objections by the United States, the Parties agree to make a good faith effort to confer regarding any disagreements concerning the training program, materials, or trainer(s) prior to initiating the dispute resolution provisions of Paragraph 33.

20.     Within thirty  (30) days following the completion of the trainings required by Paragraphs 14 and 16, SEPTA shall provide the United States written verification that the trainings have been completed and that all SEPTA employees and personnel designated by SEPTA as being responsible for either receiving or investigating complaints of discrimination or retaliation attended such trainings.

21.     All persons who undergo the above-described mandatory training shall sign or register electronically an acknowledgment of attendance at the training.  SEPTA shall keep on file all signed/registered acknowledgments for the term of this Decree and make them available for review by the United States upon reasonable notice of at least five (5) business days.

22.     While the Decree remains in effect, SEPTA shall retain necessary records to implement this Decree.  SEPTA shall permit the United States to review compliance with this Decree at any time, upon reasonable notice of at least five (5) business days.

23.     While the Decree remains in effect, SEPTA will retain all records, including any papers, electronic files or writings of any kind, reports, studies, memoranda, letters, notes, charts, tables, rosters, manuals, guidelines, rules, lists, tabulations, press releases, books, articles, treatises, recordings or transcriptions of minutes, electronic files, machine readable format files, computer files, or audio or video recordings, electronic mail, and facsimiles, that come into its possession relating to:

(a)     Complaints or charges of discrimination or retaliation made by employees of the

12

SEPTA Police Department: (1) internally within SEPTA; (2) with the EEOC; or (3) through or with any other federal or state agency authorized to receive such complaints.  The United States shall not publicly disclose any complaints or charges received under this Paragraph unless it is required for the enforcement of this Decree.

(b)      Any resulting investigation or disciplinary action taken related to the complaints referred to in Paragraph 23(a).  This provision applies to any claims that arise from the effective date of this Decree through the term of this Decree as defined in Paragraph 39 of this Decree.  SEPTA shall provide, when applicable: the name(s) and title(s) of individual(s) who conducted or are conducting the investigation; an estimate of when the investigation is expected to conclude; the steps taken during the investigation; name(s) of individual(s) interviewed; the findings of the investigation; the date the investigation was concluded; any corrective action or discipline given; and a description of SEPTA's efforts to ensure that the accountability measures for supervisors and managers implemented under Paragraph 8(k) are carried out.

(c)      SEPTA will provide copies of such records to the United States on a quarterly basis related to such complaints or charges, completion of any investigation taken related to such complaints or charges, findings related to such complaints or charges, and any disciplinary action taken related to such complaints or charges. The United States will have the right to request all documents related to such complaints or charges, or disciplinary action taken related to such complaints or charges, upon reasonable notice to SEPTA of not less than five (5) business days

13

without further order of this Court.

## IV.    INDIVIDUAL RELIEF FOR JON RANDOLPH

24.     While denying the allegations in the Complaint of the United States, and in settlement of the claims of the United States for relief on behalf of the Charging Parties, SEPTA agrees to provide Mr. Randolph the following individual relief as set forth in the paragraphs below.

25.     Within fourteen (14) days of the date of entry of this Decree: the United States shall send the proposed release in this matter attached as Appendix A ("Release") and a copy of this entered Decree to Mr. Randolph's counsel; and in settlement of the claims of the United States for relief on behalf of Mr. Randolph and in consideration of his signed Release, SEPTA shall pay Mr. Randolph within two weeks of receiving the signed Release, a total monetary award of $268,000, which represents compensatory damages. This amount shall be paid to Mr. Randolph in full without any withholdings taken out, and SEPTA shall issue Mr. Randolph an IRS Form 1099 and any other appropriate forms for that amount.

26.     Should Mr. Randolph require an official employment reference in the future, he must request the reference from either SEPTA's Director of Compensation/HRIS (a position currently held by David Schweibenz) or the Chief of SEPTA's Transit Police Department (a position currently held by Charles Lawson).  SEPTA's Director of Compensation/HRIS, and the Chief of SEPTA's Police Department shall not make any disparaging remarks about Mr. Randolph relating to the facts or claims giving rise to the United States' lawsuit, EEOC Charge Nos: 530-2020-00485, 530-2020-01951, or his individual lawsuit currently pending against SEPTA (Case No. 21-CV-04005-KSM).  SEPTA shall not provide any documents related to any facts underlying the allegations in the United States complaint, and shall not refer in any way to

14

the United States' filing of this lawsuit or to Mr. Randolph's filing of an internal complaint, EEOC charges, or his individual case (Case No. 21-CV-04005-KSM) against SEPTA when communicating with a potential employer.

## V.   INDIVIDUAL RELIEF FOR NATHAN D'ETTORRE

27.     While denying the allegations in the Complaint of the United States, and in settlement of the claims of the United States for relief on behalf of the Charging Parties, SEPTA agrees to provide Mr. D'Ettorre the following individual relief as set forth in the paragraphs below.

28.     Within fourteen (14) days of the date of entry of this Decree: the United States shall send the proposed release in this matter attached as Appendix B ("Release") and a copy of this entered Decree to Mr. D'Ettorre; and in settlement of the claims of the United States for relief on behalf of Mr. D'Ettorre and in consideration of his signed Release, SEPTA shall pay Mr. D'Ettorre within two weeks of receiving the Release, a total monetary award of $105,000, which represents compensatory damages. This amount shall be paid to Mr. D'Ettorre in full without any withholdings taken out, and SEPTA shall issue Mr. D'Ettorre an IRS Form 1099 and any other appropriate forms for that amount.  Upon receipt by SEPTA of the executed Release by Mr. D'Ettorre, SEPTA shall pay the required amounts by check made payable to "Mr. Nathan D'Ettorre" and sent to the following address:

> Mr. Nathan D'Ettorre
> [ADDRESS REDACTED]

Within ten (10) days of SEPTA's sending payment to Mr. D'Ettorre, SEPTA shall provide documentary evidence of having paid him by sending the United States a photocopy of the check.

29.     Should Mr. D'Ettorre require an official employment reference in the future, he must request the reference from either SEPTA's Director of Compensation/HRIS (a position currently held by David Schweibenz) or the Chief of SEPTA's Transit Police Department (a position currently held by Charles Lawson). The STPD shall then provide neutral employment references for Mr. D'Ettorre that state only his dates of employment, his last job title, and his wage/income history, when communicating with prospective employers or any third party seeking a reference for him. Within fifteen (15) days of receipt by SEPTA of Mr. D'Ettorre's Release (Appendix B), STPD shall provide Mr. D'Ettorre a letter of reference on SEPTA letterhead for his personal use that contains this same information. SEPTA's Director of Compensation/HRIS, and the Chief of SEPTA's Police Department shall not provide any negative employment reference for Mr. D'Ettorre and shall not make any disparaging remarks about Mr. D'Ettorre. SEPTA shall not provide to any prospective employer any documents related to any facts underlying the allegations in the United States complaint or EEOC Charge No. 530-2020-00484, and shall not refer in any way to the United States' filing of this lawsuit or to Mr. D'Ettorre's filing of an internal complaint or EEOC charge against SEPTA when communicating with a potential employer.

## VI.     INDIVIDUAL RELIEF FOR ANTHONY LEDERER

30.     While denying the allegations in the Complaint of the United States, and in settlement of the claims of the United States for relief on behalf of the Charging Parties, SEPTA agrees to provide Mr. Lederer the following individual relief as set forth in the paragraphs below.

31.     Within fourteen (14) days of the date of entry of this Decree: the United States shall send the proposed release in this matter attached as Appendix C ("Release") and a copy of this entered Decree to Mr. Lederer; and in settlement of the claims of the United States for relief

16

on behalf of Mr. Lederer and in consideration of his signed Release, SEPTA shall pay Mr.

Lederer within two weeks of receiving the Release, a total monetary award of $105,000, which

represents compensatory damages. This amount shall be paid to Mr. Lederer in full without any

withholdings taken out, and SEPTA shall issue Mr. Lederer an IRS Form 1099 and any other

appropriate forms for that amount.  Upon receipt of the executed Release by Mr. Lederer,

SEPTA shall pay the required amounts by check made payable to "Mr. Anthony Lederer" and

sent to the following address:

> Mr. Anthony Lederer
> [ADDRESS REDACTED]

Within ten (10) days of SEPTA's sending payment to Mr. Lederer, SEPTA shall provide

documentary evidence of having paid him by sending the United States a photocopy of the

check.

      32.     Should Mr. Lederer require an official employment reference in the future, he

must request the reference from either SEPTA's Director of Compensation/HRIS (a position

currently held by David Schweibenz) or the Chief of SEPTA's Transit Police Department (a

position currently held by Charles Lawson).  STPD shall then provide neutral employment

references for Mr. Lederer that state only his dates of employment, his last job title, and his

wage/income history, when communicating with prospective employers or any third party

seeking a reference for him.  Within fifteen (15) days of the executed Release by Mr. Lederer,

STPD shall provide Mr. Lederer a letter of reference on SEPTA letterhead for his personal use

that contains this same information.  SEPTA's Director of Compensation/HRIS, and the Chief of

SEPTA's Police Department shall not provide any negative employment reference for Mr.

Lederer and shall not make any disparaging remarks about Mr. Lederer.  SEPTA shall not

provide to any prospective employer any documents related to any facts underlying the

allegations in the United States complaint or EEOC Charge No. 530-2020-00487, and shall not

refer in any way to the United States' filing of this lawsuit or to Mr. Lederer's filing of an

internal complaint, or an EEOC charge against SEPTA when communicating with a potential

employer.

## VII.   DISPUTE RESOLUTION

33.     The Parties shall attempt to resolve informally any disputes that may arise under

this Decree.  The Parties shall engage in good faith efforts to resolve the issue before seeking

action by the Court.  If the United States and SEPTA are unable to reach agreement after

informally seeking to resolve a dispute, the issue may be submitted by either party to the Court

for resolution upon at least thirty (30) days' written notice to the other party.

## VIII.  CONTACTS FOR THE PARTIES

34.     To the extent possible, all documents required to be delivered to the Parties and/or

to the Charging Parties under this Decree shall be sent via electronic mail.

35.     Where such electronic delivery is not possible, all documents required to be

delivered under this Decree to the United States shall be sent via overnight delivery to the

following address:

> Lori B. Kisch, Special Litigation Counsel
> Young Choi, Trial Attorney
> Employment Litigation Section
> Civil Rights Division
> U.S. Department of Justice
> 4 Constitution Square
> 150 M Street, NE, Room 9.505
> Washington, D.C. 20002
> Lori.Kisch@usdoj.gov
> Young.Choi@usdoj.gov

36.     Where such electronic delivery is not possible, all documents required to be delivered under this Decree to SEPTA shall be sent to the following address:

> Daniel J. McGravey, Esquire
> Amy Lachowicz, Esquire
> Clark Hill
> Two Commerce Square
> 2001 Market Street, Suite 2620
> Philadelphia, PA 19103
> DMcgravey@ClarkHill.com
> ALachowicz@clarkhill.com

37.     Where such electronic delivery is not possible, all documents required to be delivered under this Decree to Mr. Randolph shall be sent to the following address:

> Mr. Jon Randolph
> c/o Olugbenga Abiona, Esquire
> Abiona Law, PLLC
> P.O. Box 3326
> Cherry Hill, NJ 08034
> Oluesq@aol.com

38.     Either the United States, SEPTA, or Mr. Randolph may update physical or electronic mailing addresses without requiring any changes to the Consent Decree.

## IX.     JURISDICTION OF THE COURT

39.     The Court shall retain jurisdiction over this Decree for the purpose of resolving any disputes or entering any orders that may be necessary to implement the relief provided in the Decree.  At the end of four (4) years from the date of entry of this Decree, without further order of the Court, this Decree shall be automatically dissolved, and this action shall be dismissed with prejudice.

40.     The time limits set forth throughout this Decree for providing any information required by this Decree may be expanded upon mutual consent of the Parties or upon order of the Court following written notice to the other party and the opportunity for the other party to

19

respond.

## X.    GENERAL PROVISIONS

41.    The Parties shall bear their own costs, expenses, and attorney's fees in this action.

42.    If any provision of this Decree is found to be unlawful, only the specific provision

in question will be affected and the other provisions will remain in full force and effect.

43.    This Decree may be executed in multiple counterparts, each of which together

shall be considered an original but all of which shall constitute one Decree. The Parties agree to

be bound by electronic and facsimile signatures.


It is so ORDERED, this _____ day of _____, 2022.

_____
UNITED STATES DISTRICT JUDGE

AGREED AND CONSENTED TO:

For Plaintiff United States of America:

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

By:

KAREN D. WOODARD (MD Bar [no number issued])
Chief

_____ */s/ Lori Kisch* _____
LORI B. KISCH (DC Bar No. 491282)
Special Litigation Counsel
YOUNG CHOI (CA Bar No. 327027)
Trial Attorney
U.S. Department of Justice
Employment Litigation Section, Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Telephone: (202) 305-0942
Email: Lori.Kisch@usdoj.gov, Young.Choi@usdoj.gov

For Defendant Southeastern Pennsylvania Transportation Authority:


_____/s/ Daniel McGravey_____
DANIEL J. MCGRAVEY (PA Bar ID No. 83176)
AMY C. LACHOWICZ (PA Bar ID No. 92192)
Clark Hill PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Email: Dmcgravey@clarkhill.com, Alachowicz@clarkhill.com

## APPENDIX A

## RELEASE

I, Jon Randolph, for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in United States v. Southeastern Pennsylvania Transportation Authority (E.D. Pennsylvania), hereby release and discharge the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and its current, former, and future officials, employees and agents from all legal and equitable claims which have been or could have been asserted by the United States in its complaint filed in that court case and the charge of discrimination that I filed with the Equal Employment Opportunity Commission (Charge Nos. 530-2020-00485, 530-2020-01951).

I understand that the relief to be given to me does not constitute an admission by SEPTA of the validity of any claim raised by me, or on my behalf.

This Release and any other Release that I may execute to terminate the cause of action in the United States District Court for the Eastern District of Pennsylvania captioned as Jon L. Randolph v. SEPTA, et al., Civil Action No. 21-cv-04005, constitute the entire agreement between SEPTA and myself in connection with this case, without exception or exclusion.  Any additional release I may enter into beyond this release, will not in any way limit the relief I will receive under this Consent Decree.

I hereby acknowledge that I was provided a copy of the Consent Decree in this action and had an opportunity to consult with my private attorney about the terms of the Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this __ day of _____, 2022.


_____
Jon Randolph

22

# APPENDIX B

## RELEASE

I, Nathan D'Ettorre, for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in <u>United States v. Southeastern Pennsylvania Transportation Authority</u> (E.D. Pennsylvania), hereby release and discharge the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and its current, former, and future officials, employees and agents from all legal and equitable claims which have been or could have been asserted by the United States in its complaint filed in that court case and the charge of discrimination that I filed with the Equal Employment Opportunity Commission (Charge No. 530-2020-00484).

I understand that the relief to be given to me does not constitute an admission by SEPTA of the validity of any claim raised by me, or on my behalf.

This Release and any other Release that I may execute with SEPTA related to my employment with SEPTA constitute the entire agreement between SEPTA and myself in connection with this case, without exception or exclusion.  Any additional release I may enter into beyond this release, will not in any way limit the relief I will receive under this Consent Decree.

I hereby acknowledge that I was provided a copy of the Consent Decree in this action and reviewed the terms of the Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this __ day of _____, 2022.

_____
Nathan D'Ettorre

## **APPENDIX C**

## **RELEASE**

I, Anthony Lederer, for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in United States v. Southeastern Pennsylvania Transportation Authority (E.D. Pennsylvania), hereby release and discharge the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and its current, former, and future officials, employees and agents from all legal and equitable claims which have been or could have been asserted by the United States in its complaint filed in that court case and the charge of discrimination that I filed with the Equal Employment Opportunity Commission (Charge No. 530-2020-00487).

I understand that the relief to be given to me does not constitute an admission by SEPTA of the validity of any claim raised by me, or on my behalf.

This Release and any other Release that I may execute with SEPTA related to my employment with SEPTA constitute the entire agreement between SEPTA and myself in connection with this case, without exception or exclusion.  Any additional release I may enter into beyond this release, will not in any way limit the relief I will receive under this Consent Decree.

I hereby acknowledge that I was provided a copy of the Consent Decree in this action and reviewed the terms of the Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this __ day of _____, 2022.


_____
Anthony Lederer